**MOUNTAIN STATES MIXED FEED COMPANY, Joseph Pepper, Marvin Pepper, and Freeman Pepper, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 8730.**

United States District Court
D. Colorado.

May 26, 1965.

Isaacson, Rosenbaum, Goldberg & Miller, Stanton D. Rosenbaum, Denver, Colo., for plaintiffs.

Burton A. Schwalb, Atty., Tax Div., Treasury Dept., Washington, D. C., for defendant.

CHILSON, District Judge.

The plaintiffs appeared by Isaacson, Rosenbaum, Goldberg and Miller, Mr. Stanton D. Rosenbaum; the defendant appeared by Mr. Burton A. Schwalb.

This matter came on for trial to the Court on the 24th day of May, 1965. The Court heard the evidence and the argument of counsel and took the matter under advisement for the preparation of findings of fact and conclusions of law.

FINDINGS OF FACT

This is a civil action for the refund of federal income taxes.

The pre-trial order contains a statement of uncontroverted facts which the Court incorporates as a part of the findings of fact in this case by setting forth the uncontroverted facts in Appendix A attached to these findings. The Mountain States Mixed Feed Company is a Colorado corporation formerly engaged in the business of operating a feed mill and feed yards. On June 6, 1961, the company, pursuant to Section 337 of the Internal Revenue Code of 1954, adopted a plan of liquidation and pursuant thereto sold all of its assets in the calendar year 1961 except certain accounts receivable, which were sold on May 18, 1962.

The company filed an income tax return for the year 1962 showing a net operating loss of $7,319.15. Upon application for a carryback of this loss to previous years, the company received a refund of $2,195.75. Thereafter the Commissioner of Internal Revenue determined that the corporation did not sustain a loss in 1962, but instead had taxable income of $29,-080.30. As a result of this and some adjustments to 1961 income, the Commissioner by timely assessment recovered the amount refunded, plus interest, and in addition assessed additional income taxes for the years 1958, 1959 and 1962, all of which, together with interest, has been paid, in the total amount of $18,594.39. The adjustments made by the Commis-

sioner which resulted in the assessments are briefly:

For the 1961 taxable year the Commissioner disallowed a deduction for depreciation in the amount of $13,156.33 on assets which were sold in 1961 for a price in excess of their depreciated basis, and disallowed the deduction of $4,000.00 of a $5,500.00 legal fee on the ground that the $4,000.00 was "attributable to services rendered with respect to the sale of assets" as distinguished from services "rendered with respect to the liquidation * * *." (See page 3, pre-trial order).

For the 1962 taxable year the Commissioner included in income the plaintiff's reserve for bad debts on the ground that when the plaintiff sold its accounts receivable in 1962 there was no longer any necessity for such a reserve and, therefore, the reserve should be charged back to income, even though the sale resulted in a loss to the plaintiff equal to the amount of the bad debt reserve.

The plaintiffs contest each of these adjustments.

The questions presented to this Court are stated in the pre-trial order as follows:

"A. Is plaintiff, Mountain States Mixed Feed Company, entitled to deduct depreciation, in the year of sale (1961) on assets sold at a price in excess of the already depreciated basis of those assets as of the beginning of the year of sale?

"B. Must the plaintiff, Mountain States Mixed Feed Company restore to income its reserve for bad debts upon sale (in 1962) of its assets and liquidation?

"C. To what extent was the legal fee of $5,500, paid (in 1961) by plaintiff, Mountain States Mixed Feed Company, allocable to legal services with respect to the sale of assets, and is such portion of the legal fees deductible as a current expense rather than being offset against the gain on the sale of assets?"

The contentions of the parties with respect to these questions are concisely set forth in the pre-trial order as follows:

"A. *With respect to Question 'A'*

"1. *Plaintiffs contend* that depreciation is allowable in the year of sale on assets sold within that year at a price in excess of the already adjusted basis.

"2. *Defendant contends* that no depreciation is allowable in the year of sale when the sales price is in excess of the already adjusted basis.

"B. *With respect to Question 'B'*

"1. *Plaintiffs contend* that the corporation's accounts receivable were sold at a price below their adjusted bases and therefore the reserve for bad debts, incident thereto, should be reduced by the amount of the loss on the sale.

"2. *Defendant contends* that regardless of whether the receivables were sold at a loss (i. e. at a price below adjusted basis), the loss sustained does not affect the reserve for bad debts, the reserve being includable in income upon sale of the receivables which gave rise to the reserve.

"C. *With respect to Question 'C'*

"1. *Plaintiffs contend* that the legal fee of $5,500 was attributable to services rendered with respect to the liquidation proceedings rather than the sale of assets, and therefore is a deductible expense.

"2. *Defendant contends* that no more than $1,500 of the said legal fee is attributable to services rendered with respect to the liquidation, with, at least, the remaining $4,000 being attributable to services rendered with respect to the sale of assets."

FINDINGS OF FACT WITH REFERENCE TO DEPRECIATION

The Court finds that the depreciable property here involved was largely milling

and grinding machinery and equipment and buildings. This property was sold to Tenneco, which company desired the property for use as a tank farm in connection with its oil operations. The depreciable assets were sold in 1961 at a price in excess of the adjusted or already depreciated basis of such assets as of the beginning of the year 1961. The depreciation deduction disallowed by the Commissioner is $13,156.33. This amount is properly deductible if depreciation can be taken in the year of sale when the sale price exceeds the depreciated basis of the assets sold.

## FINDINGS OF FACT WITH REFERENCE TO THE RESERVE FOR BAD DEBTS

The Court finds that the plaintiff company reported on an accrual basis, thereby reporting in its gross income all income which was earned, irrespective of whether or not it was actually received. Plaintiff under the law had the right to and did set up on its books a reserve for bad debts, whereby the plaintiff each year deducted from income an estimated amount for bad debts. This bad debt reserve as of December 31, 1961 amounted to $32,614.37.

As of May, 1962, the corporation had collected all of its outstanding accounts receivable except as follows:

| | |
|---|---|
| Accounts receivable | $36,057.81 |
| Note receivable | 15,094.93 |
| Total | $51,152.74 |

On May 18, 1962, the company sold the accounts and note receivable to the Dencol Finance Company as follows:

| Item | Balance due | Sales Price | Loss |
|---|---|---|---|
| Accounts Receivable | $36,057.81 | $ 1,469.75 | $34,588.06 |
| Note Receivable | 15,094.93 | 13,283.54 | 1,811.39 |
| Total Loss | | | $36,399.45 |

The Court finds that this sale was a bona fide sale of the accounts and note receivable for value and that the plaintiff did actually suffer a loss in its accounts and note receivable in the amount of $36,399.45. This loss largely resulted from the account of one Stutzman who owed in excess of $30,000.00. At the time of the sale the plaintiff was involved in litigation with Stutzman over the account and Dencol paid approximately $770.00 for that account. Stutzman subsequently took bankruptcy and recovery on the Stutzman account was less than the amount paid by Dencol for it.

The Court finds that after the sale price of the accounts and note receivable was agreed upon by the plaintiff and Dencol, adjustments in charges to the reserve for bad debts were made for the purpose of having the reserve for bad debts equal the loss which was actually sustained, and thereupon this loss was charged to the reserve account.

The Commissioner determined that upon the sale of all the accounts and note receivable there was no longer any need for a bad debt reserve, and therefore, the bad debt reserve should be returned to income. The Commissioner thereupon charged to income $36,399.45 of the reserve for bad debts.

The Court finds that in so doing the Commissioner charged the corporation with $36,399.45 of income which it never received.

## FINDINGS OF FACT WITH REFERENCE TO LEGAL FEES

The Court finds that the corporation did pay in the year 1961 legal fees in the amount of $5,500 which the company claimed as a deductible expense. The Commissioner disallowed $4,000.00 of the deduction, contending that not more than

$1,500.00 of the legal fee was attributable to services rendered with respect to the liquidation, and that the remaining $4,000.00 was attributable to services rendered with respect to the sale of assets. This $4,000.00, contends the government, should be taken into consideration in determining the gain or loss of the sale of the assets and is not deductible from income.

At the trial the plaintiffs agreed to accept the allocation of the attorney's fees made by the Commissioner but contend that the entire fee is deductible as ordinary and necessary business expenses incurred in liquidation, and that as such it is deductible from income.

The Court further finds that the sale of the assets of the corporation was made pursuant to the plan of liquidation and the legal services performed in the sale of assets were services performed in carrying out the plan of liquidation.

## CONCLUSIONS OF LAW

I. The Court concludes as a matter of law that depreciation is properly chargeable in the year in which assets are sold, even though the depreciable assets are sold for a price which exceeds the depreciated basis of those assets. The Court concludes as a matter of law that the Commissioner erred in disallowing the item of $13,156.33 of depreciation claimed by the plaintiff in its 1961 income tax return.

II. The Court concludes as a matter of law that under the facts as found by the Court, the Commissioner erred in charging the bad debt reserve of the plaintiff as income to the plaintiff in the taxable year 1962.

III. The Court concludes as a matter of law that the legal services performed with respect to the sale of plaintiff's assets under a plan of liquidation pursuant to Section 337 of the Internal Revenue Code of 1954 were services rendered in carrying out the liquidation, and are properly deductible from income, and the legal fees of $5,500.00 are deductible from the 1961 income in their entirety.

IV. The Court concludes as a matter of law that the plaintiffs are entitled to a refund in the amount of $18,594.39, together with interest thereon as provided by law.

It is therefore ordered that this matter is continued to Friday, June 11, 1965, at 10:30 A.M. for further hearing to determine the exact amount of recovery to which the plaintiff is entitled and for the purposes of formulating the judgment to be entered.

It is further ordered that the foregoing findings of fact and conclusions of law shall not be construed as a final judgment for the purposes of appeal.

## APPENDIX A

### UNCONTROVERTED FACTS

A. Mountain States Mixed Feed Company (hereinafter called the "corporation") was incorporated under the laws of the state of Colorado in 1923, and engaged in the business of operating a feed mill and feed yards.

B. The corporation kept its books and records and filed its federal income tax returns on the accrual method of accounting and on the basis of a calendar taxable year.

C. The corporation ceased doing business on May 21, 1962. The taxes involved in this case are those of the corporation for the years 1958, 1959, 1961 and for the short period (i. e. the last fiscal period of the corporation) from January 1, 1962 through May 21, 1962.

D. The corporation filed its federal income tax return for 1958, reporting taxable income of $21,911.08 and an income tax liability of $6,573.32, which amount it paid in two equal installments. On March 19, 1962, the corporation filed an Application for Tentative Carryback Adjustment, claiming to have sustained a loss of $18,526.12 in 1961 which should be carried back to and offset against the income ($21,911.08) of 1958, which carryback would result in a refund of 1958 tax in the amount of $5,557.83; this amount plus interest was refunded. Thereafter, the Commissioner of Internal Revenue de-

termined that the loss sustained by the corporation in 1961 was only $1,369.79 and that only this amount should be carried back to offset 1958 income. By allowing a loss carryback of only $1,369.-79 (instead of the carryback of $18,526.-12 as previously claimed and allowed), the Commissioner timely assessed an income tax deficiency for 1958 of $5,146.90 which was paid (together with interest of $589.85) on December 16, 1963. A claim for refund was filed on January 8, 1964, but has not been allowed.

E. The corporation filed its federal income tax return for 1959, reporting taxable income of $13,919.53 and an income tax liability of $4,175.86 which it paid with the filing of the return on March 15, 1960. On June 20, 1962, the corporation filed an Application for Tentative Carryback Adjustment claiming to have sustained a loss of $7,319.15 in the short fiscal period from January 1, 1962 through May 21, 1962, which loss should be carried back to and offset against its 1959 income ($13,919.53) resulting in a refund of 1959 tax of $2,195.75; this amount plus interest was refunded. Thereafter, the Commissioner of Internal Revenue determined that the corporation did not sustain a loss in the short period in 1962, but instead had taxable income of $29,080.30. As a result of this determination, the Commissioner also determined that there was no loss to be carried back to 1959 and hence timely assessed as a deficiency, income tax of $2,195.75, the amount previously refunded under the application for a tentative loss carryback allowance for 1959. This amount of $2,195.75 plus interest of $200.14 was paid on December 16, 1963. A claim for refund was filed on January 8, 1964, but has not been allowed.

F. The corporation's 1958 and 1959 income tax liability here in issue results solely from the adjustments made for the years 1961 and 1962 and the propriety of a claimed loss carryback from 1961 and 1962 to 1958 and 1959 respectively. The taxable year of 1960 is not involved in this action.

G. As noted in paragraph V–D, supra, the corporation has claimed that it sustained a net operating loss in 1961 of $18,526.12; not only did it claim such a loss on the application for a tentative loss carryback allowance to 1958, but also reported such a loss on its 1961 federal income tax return. Since, after audit and review, the Commissioner determined a 1961 loss of $1,369.79, no income tax deficiency was assessed for 1961. The Commissioner's determination therefore, affects only the amount of the net operating loss to be carried back from 1961 to 1958.

H. As noted in paragraph V–E, supra, the corporation has claimed a net operating loss of $7,319.15 for 1962; not only did it claim such a loss on the application for a tentative loss carryback allowance to 1959, but also reported such a loss on its return for 1962. By determining that the corporation had taxable income of $29,080.30 in 1962 rather than a loss, the Commissioner disallowed the loss carryback to 1959 (previously tentatively allowed) and timely assessed an income tax deficiency of $9,621.79 for 1962. This amount plus interest of $839.99 was paid on December 16, 1963. A claim for refund of this amount was filed on January 8, 1964 but has not been allowed.

I. The aforementioned claims for refund, contesting the 1961 and 1962 adjustments, are, to recapitulate, as follows:

| Year | Tax | Interest |
|------|-----|----------|
| 1958 | $ 5,146.90 | $ 589.85 |
| 1959 | 2,195.75 | 200.14 |
| 1962 | 9,621.76 | 839.99 |
| | $16,964.41 | $ 1,629.98 |
| TOTAL | | $18,594.39 |

J. On June 6, 1961, the stockholders of the corporation voted to liquidate the corporation pursuant to Section 337 of the Internal Revenue Code of 1954, and, on June 28, 1961, the corporation filed notice of the plan of liquidation with the District Director of Internal Revenue at Denver, Colorado.

K. On its 1961 return, the corporation reported a depreciation deduction of $14,062.10 of which $13,156.33 was taken on assets which had been sold in 1961. These assets, on which the said $13,156.23 depreciation deduction was taken, were sold at a gain of $593,974.39 (i. e. at a price in excess of the adjusted or already depreciated basis of such assets as of the beginning of the year, namely as of January 1, 1961). This depreciation deduction was not allowed. In addition, the Commissioner disallowed a deduction of $4,000 out of a claimed legal fee expense deduction of $5,500. By virtue of the liquidation plan under Section 337, the gain on the sale of the assets (on which the said depreciation was taken) was not taxable to the corporation. Whereas the corporation originally reported a net operating loss of $18,526.12 from other transactions, the Commissioner's disallowance of $17,156.33 in deductions ($13,156.33 in depreciation and $4000 in legal fees) and, thus, his corresponding increase in income in this amount, resulted in a determination that the corporation's net operating loss was only $1,369.79 ($18,526.12 less $17,156.33).

L. On its 1962 return, the corporation reported a loss of $7,319.15, but the Commissioner determined that the corporation had additional income of $36,399.45, thereby resulting in net taxable income of $29,080.30 ($36,399.45 less $7,319.15) and an income tax liability of $9,621.76. This increase in income of $36,399.45 results from the corporation's sale of certain accounts receivable as set forth in paragraphs V–M, N, O, infra.

M. The corporation used the reserve method to account for its bad debts. On January 1, 1961, the corporation's reserve for bad debts was $7,379.45; this was increased during 1961 by $25,238.42, a deduction also being taken in this amount. Hence, as of January 1, 1962, the corporation's reserve for bad debts totaled $32,617.87 less a bad debt write-off of $3.50, leaving a net reserve for bad debts of $32,614.37. As of May 18, 1962, the corporation had collected all of its outstanding accounts receivable except for the following:

| Accounts Receivable | $36,057.81 |
|---|---|
| Note Receivable | 15,094.93 |
| | $51,152.74 |

On May 18, 1962, the corporation sold the above to the Dencol Finance Company as follows:

| Item | Balance Due | Sales Price | Loss |
|---|---|---|---|
| Accounts Receivable | $36,057.81 | $ 1,469.75 | $34,588.06 |
| Note Receivable | 15,094.93 | 13,283.54 | 1,811.39 |
| Total loss | | | $36,399.45 |

N. From the January 1, 1962 reserve for bad debts of $32,614.37 (see paragraph V–M, supra), the corporation removed $809.43 for a bad debt written off, leaving a balance during 1962 of $31,804.94. By adjusting entries, the corporation increased the reserve by $5,059.62 (taking a deduction therefor), increasing the reserve balance pro tanto to $36,864.56, and then closed out the reserve by a charge thereto of $36,864.56 consisting of the loss on the sale of the accounts receivable ($34,588.06), the loss on the sale of the note receivable ($1,811.39) and the uncollectible accrued interest of $465.11.

O. The only adjustment for 1962 by the Commissioner was to deny the claimed losses as an offset to the reserve, leaving a balance in the reserve of $36,399.45 and requiring that this reserve be restored to income. By increasing income by $36,399.45 over the claimed loss of $7,319.15 (not adjusted), he determined that the corporation had taxable income of $29,080.30.